UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| SUNNY JOHANSSON, SUSAN CEDENO, WILLIAM SHELBY, KYNDELL WALSH, and KATHY AINSLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CENTRAL GARDEN & PET COMPANY; and FARNHAM COMPANIES, INC.,<br><br>Defendants.<br>_____/ | No. C 10-03771 MEJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**<br><br>**(DKT. #9)** |

## I. INTRODUCTION

Before the Court is Defendant Central Garden & Pet Company and Defendant Farnham Companies, Inc.'s ("Defendants") motion to transfer or alternatively, to dismiss, Plaintiffs' Sunny Johansson, Susan Cedeno, William Shelby, Kyndell Walsh, and Kathy Ainsley ("Plaintiffs") class action complaint. (Dkt. #9.) The Court held a hearing on the matter on December 2, 2010. Based on the parties papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. BACKGROUND

The following pertinent background facts are taken from Plaintiffs' complaint. (Dkt. #1.) Plaintiffs initiated this putative class action against Defendants, manufacturers of certain flea and tick products meant for use on household pets. While the products in some cases were effective in killing fleas and ticks, they also sickened and sometimes killed the animals upon which they were used. Each named plaintiff details the harmful effects that Defendants' products had on their cat or dog.

Plaintiffs allege that the symptoms suffered by their companion animals are consistent with "Pyrethrin, Pyretoids and/or Permethrin poisoning, which is the active ingredient in the flea and tick control products at issue here." Defendants' products are known to contain this chemical, and

are sold under names including "Biospot" and "Spot-On" flea and tick products, and perhaps other product names. Plaintiffs allege that Defendants have known for many years that the chemicals they use will substantially injure or kill significant numbers of cats and dogs.

Defendants have reported to the Environmental Protection Agency ("EPA") a sharp increase in the adverse consequences of their products. On May 5, 2009, as a result, the EPA issued an advisory that pet owners should be aware of the adverse reactions pets may experience to "spot-on" flea and tick control medication, recommending that pet owners take careful precaution when using the products. The Center for Public Integrity issued a similar report questioning the safety of such products.

Plaintiffs bring the instant action with the following preliminary class definition: "All persons who purchased flea-control products manufactured or marketed by defendants containing Pyrethrin or Pyrethroids including Permethrin within the applicable statute of limitations period." Plaintiffs allege the following causes of action: (1) violation of California Business and Professions Code section 17200 ("UCL"); (2) Breach of Implied Warranty of Merchantability; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (4) Strict Product Liability; (5) violation of the California Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.*; and (6) a cause of action for punitive damages. Plaintiff Johannson is a California citizen, while the other named Plaintiffs are scattered across the country.

Defendants filed their motion to transfer on October 22, 2010. (Dkt. #9.) On November 11, 2010, Plaintiffs filed an opposition (Dkt. #18), and on November 18, 2010, Defendants filed a reply (Dkt. #24).

### III.  DISCUSSION

In their motion, Defendants contend that Plaintiffs' counsel is already suing the same defendants on behalf of the same purported class on a similar basis in the United States District Court in New Jersey ("*Snyder* action" or "New Jersey action"). (Defs.' Mot. 1:22-25, Dkt. #9.) Defendants argue that the instant action is an attempt to duplicate and split class claims being litigated elsewhere, and that transfer to the District of New Jersey is thus appropriate. *Id.* at 1:26-27.

In the alternative, Defendants contend that Plaintiffs' claims should be dismissed. *Id.* at 2:2-11.

In response, Plaintiffs contend that their primary objective in the California action is to force Defendants to remove their dangerous products from the market, although they will also attempt to recover the economic losses they have incurred. (Pls.' Opp'n 1:18-25, Dkt. #18.) Plaintiffs maintain that the present case and the *Snyder* action differ in that in the instant action, Plaintiffs assert California claims on behalf of a nationwide class and alternatively, a California class, while the *Snyder* action asserts New Jersey and Illinois state-law claims on behalf of a nationwide class. *Id.* at 2:2-7. Plaintiffs argue that this action does not present the same issues as the *Snyder* action, does not seek the same remedies, and does not seek certification of any overlapping issues. *Id.* at 2:8-12. Regarding Defendants' motion to dismiss, Plaintiffs contend that none of Defendants' arguments are outcome determinative and thus, that the motion should be denied. *Id.* at 2:14-16.

## A.    Legal Standard

28 U.S.C. § 1404(a) provides that a district court may transfer a civil action to any other district in which the action could have been brought, if convenient to the parties and witnesses and in the interests of justice. The determination to transfer lies within the discretion of the trial court. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007). The trial court must first determine whether the case "might have been brought" in the proposed transferee venue prior to weighing convenience factors. *Wiley v. Gerber Products Co.*, 667 F. Supp. 2d 171, 172 (D. Mass. 2009).

After that initial determination, a motion to transfer venue under § 1404(a) generally requires weighing of a non-exhaustive list of factors, such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). The court has the broad discretion to address some of these or other factors based on the particular facts of each case. *Bibo v. Federal Express, Inc.*, 2007 WL 2972948, at *2 (N.D. Cal. October 10, 2007). Importantly, in

putative class actions, as in derivative suits, even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount. *Stein v. Immelt*, 2010 WL 598925, at *2 (D. Conn. February 18, 2010). Further, "[a]lthough great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Papaleo v. Cingular Wireless Corp.*, 2007 WL 1238713, at *1 (N.D. Cal. April 26, 2007) (plaintiffs choice of forum in putative class action should also be given less weight because the law of the transferor forum will be applied in the transferee district).

**B.     Application to the Case at Bar**

    1.     <u>Whether the Action Could Have Been Brought in New Jersey</u>

In their opposition, Plaintiffs argue that Defendants have not shown (and did not argue in their moving papers) that the action could have been brought in New Jersey in the first instance. (Pls.' Opp'n 4:21-22, Dkt. #18.) Plaintiffs contend that the two actions do not overlap — that if a nationwide class is certified in either action, it will be under the laws of the respective states where the action was filed and that the actions seek distinct remedies — and thus that Defendants can not meet their burden. *Id.* at 5:3-15.

Defendants, in response, argue that not only could the action have been brought in New Jersey in the first instance, but that it essentially was brought there. (Def.'s Reply 2:16-18, Dkt. #24.) Defendants maintain that a comparison of the complaints in each case shows that Plaintiffs are wrong; both cases are brought on behalf of a nationwide class of persons who purchased the same product produced by the same defendants, both cases assert warranty and fraud claims based on the same contention that Defendants misled consumers about the safety of the product, and both cases seek injunctive relief. *Id.* at 2:19-24.

Here, it is clear under 28 U.S.C. § 1332(d) that both the New Jersey District Court and this Court have subject matter jurisdiction over the action, because it is a class action where the amount in controversy exceeds $5,000,000, and at least one member of the putative class is diverse from

Defendants. (Compl. ¶ 11.) It is also clear that the New Jersey District Court has personal jurisdiction over Defendants, as "Defendants have been sued by the same purported class by some of the same Plaintiffs' counsel for the same alleged injury under many of the same legal theories" in New Jersey, and have not contested jurisdiction. (Defs.' Reply 2:10-14, Dkt. #24.) On this finding alone, the instant action could have been brought in New Jersey.

      2.    <u>Whether Factors of Convenience and The Interests of Justice Weigh in Favor of Transfer</u>

As noted above, concerns over judicial efficiency are paramount in situations such as this. *Stein*, 2010 WL 598925, at *2. In that vein, courts weighing the convenience of a transfer should consider "the practical issues that make a case easier or more difficult to try in a given forum, such as familiarity of each forum with applicable law and the relative court congestion." *Bibo*, 2007 WL 2972948, at *2 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986)).

Defendants contend that, in addition to the *Snyder* action, several other actions have been filed against different companies involved in the manufacture of flea and tick products. (Defs.' Mot. 4:2-10, Dkt. #9; Yuhas Decl. ¶¶ 5-7, Dkt. #10.) Six of the actions have been incorporated into one consolidated class action complaint, another has been incorporated into the *Snyder* complaint, and all have been assigned to the Honorable William Martini. (Defs.' Mot 4:2-10, Dkt. #9; Yuhas Decl. ¶¶ 5-7, Dkt. #10.) Motions to dismiss are pending in each case. (Yuhas Decl. ¶ 7, Dkt. #10.) It is clear that the transferee forum is already quite familiar with the facts and law governing the instant case. While only the *Snyder* action is against the exact Defendants in this matter, each matter appears to allege similar claims, and thus have been assigned to one judge. Considering this, in conjunction with the fact that a plaintiff's choice of forum is given less deference in a case such as this, the Court finds that the familiarity of the New Jersey District Court with the subject matter of this case weighs very heavily in favor of transfer.

Another consideration is which forum will be more convenient to third party witnesses, as that factor is often the most significant. *Papaleo*, 2007 WL 1238713, at *2. In this case, it appears

5

that "transfer would be substantially more convenient for each such witness, because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings." *Id.* However, even when the convenience of parties and witnesses weighs against transfer, where there is an action pending with the same or similar issues in another court, that factor will weigh heavily in favor of transfer. *Hoffman v. Medquist, Inc.*, 2005 WL 3095713, at *2 (N.D. GA. November 16, 2005).

Here, Defendants contend that in order to reach outcomes in the two cases, should they remain venued in different districts, they will be exposed to duplicative discovery and motions and will need to produce duplicative documents and depose witnesses separately in each case. (Defs.' Reply 3:16-19, Dkt. #24.) More importantly, Defendants point out that if both courts were to certify nationwide classes, an anomalous and confusing situation would result. *Id.* at 3:27-2. Plaintiffs contend that each court may choose only to certify statewide classes, and that the actions seek distinct remedies. (Pls.' Opp'n 5:8-15, Dkt. #18.) However, this seems to ignore that there are Illinois state law claims in the New Jersey action, and that the transferee court will continue to apply the law of the state in which the action originated.

Thus, it appears that transfer is warranted not only because there are there similar or substantially the same issues as in the *Snyder* action, but also because New Jersey may in fact be the more convenient forum for parties and witnesses. Only Plaintiff Johannson is a California resident. While the Defendants may have an office here in California, (Pls.' Mot. 6:7-10, Dkt. #18), they are already before the court in New Jersey and have not contested jurisdiction or venue there. (Defs.' Reply 2:12-15, Dkt. #24.) Similarly, witnesses will already be required to travel to New Jersey, regardless of their location. Requiring them to also travel to California would be a needless increase in cost and travel time. Upon review of all factors, it appears that transfer of this case is the best option.

Finally, in determining whether a transfer is convenient, case consolidation is a factor to consider, but the important point is that the pendency of another action could have positive effects on consolidation of discovery and convenience to the parties and witnesses. *A. J. Industries, Inc. v.*

*U.S. Dist. Court for Central Dist. of California*, 503 F.2d 384, 389 (9th Cir. 1974). It seems logical that discovery could be combined where the allegations in the parties' respective complaints are similar.          As stated above, the causes of action in this case are as follows:  (1) violation of California's UCL; (2) Breach of Implied Warranty of Merchantability; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (4) Strict Product Liability; (5) violation of the California Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.*; and (6) a cause of action for punitive damages.  (Dkt. #1.)  In the *Snyder* action, the causes of action are: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Unjust Enrichment; (4) violations of the New Jersey Consumer Fraud Act; and (5) violations of Illinois' Consumer Fraud and Deceptive Business Practice Act.  (Yuhas Decl., Ex. 1, Dkt. #10.)  At first glance, the causes of action pled appear slightly different; however, even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount in determining whether to transfer a case upon a motion for transfer.  *Stein v. Immelt*, 2010 WL 598925, at *2.  A side-by-side comparison of the allegations in each complaint will reveal whether the actions are sufficiently similar.

   The fourth and fifth causes of action in the *Snyder* action are similar to the California Plaintiffs' UCL claim, in that they all allege that Defendants misrepresented the safety of their products, knowing that the products were unsafe, and that this was unconscionable and fraudulent business practice.  (Compl. ¶¶ 64-69; Yuhas Decl., Ex. 1 ¶¶ 76-89, Dkt. #10.)

   While the *Snyder* plaintiffs allege claims for breach of both express and implied warranty, and in the instant action the Plaintiffs allege only breach of implied warranty, the allegations supporting each cause of action are similar.  Each complaint alleges that Defendants warranted their goods for a purpose, and that they were not, in actuality, fit for that purpose.  The California Plaintiffs' third cause of action is also an implied warranty violation, but brought under a federal statute.  The allegations supporting this cause of action are similar to the warranty claims in the New Jersey action, that Defendants warranted their products but that they were not fit for proper use. Plaintiffs in the instant action allege a strict product liability claim, while the New Jersey plaintiffs

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  do not.  However, the allegations are the same: the products sold by Defendants are unreasonably
2  safe and cause an unreasonable risk of illness or death to pets.
3    The two seemingly unrelated causes of action are the *Snyder* action's unjust enrichment
4  claim, and the instant actions's punitive damages claim.  However, the unjust enrichment claim
5  alleges that Defendants misrepresented the quality and effectiveness of their product, from which
6  they benefitted, and the punitive damages claim asserts that Defendants knew of the risks and
7  continued to market their products.  Accordingly, while the causes of action do differ, the allegations
8  are the same.  It is feasible that discovery could be consolidated on this basis, and that weighs in
9  favor of transfer.  *A. J. Industries, Inc.*, 503 F.2d at 389.
10   The purpose of transfer under § 1404(a) "is to eliminate duplication in discovery, avoid
11 conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the
12 attorneys, the witnesses, and the courts." *Papaleo*, 2007 WL 1238713, at *2 (*citing* Manual for
13 Complex Litigation (Fourth) § 20.131 (2004)).  It is important to recognize that judicial economy
14 will best be served when a trial court defers to a first-filed action.  *Church of Scientology of*
15 *California v. United States Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  Based on the
16 foregoing, the Court finds that these objectives will be satisfied by transfer to the District of New
17 Jersey.  The interests of justice will be best served by transferring the instant action to the venue in
18 which several similar actions are already pending before Judge Martini.

### IV.  CONCLUSION

20   Upon careful review, the Court finds that transfer to the District of New Jersey is proper and
21 thus GRANTS Defendants' motion to transfer.  The Clerk of Court is ORDERED to transfer this
22 case to the United States District Court in New Jersey.  Accordingly, the Court need not discuss
23 Defendants' alternative motion to dismiss.
24   **IT IS SO ORDERED.**

26 Dated: December 2, 2010
27                      Maria-Elena James
                     Chief United States Magistrate Judge